IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD M. COLEMAN, JR. | : | 3:12-cv-1217 |
| Plaintiff, | : | |
| v. | : | Hon. John E. Jones III |
| MICHAEL J. ASTRUE, Under Commissioner of the Social Security Administration, | : | |
| Defendant. | : | |

**<u>MEMORANDUM</u>**

**January 6, 2014**

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Richard M. Coleman's ("Plaintiff" or "Coleman") claim for disability benefits, specifically disability insurance benefits ("DIB") and supplemental security income ("SSI"). The administrative record has been submitted and the issues have been briefed by the parties. (Docs. 8, 9, 11). Accordingly, this matter is ripe for our review. For the reasons that follow, we shall affirm the decision of the Commissioner.

**I.    STANDARD OF REVIEW**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. *See Poulos v. Commissioner of Social Security,* 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Commissioner of Social*

*Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999); *Krysztoforski v. Chater,* 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." *Id.; Brown v. Bowen,* 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); *Keefe v. Shalala,* 71 F.3d 1060, 1062 (2d Cir. 1995); *Mastro v. Apfel,* 270 F.3d 171, 176 (4th Cir. 2001); *Martin v. Sullivan,* 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)(quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)); *Johnson v. Commissioner of Social Security,* 529 F.3d 198, 200 (3d Cir. 2008);

*Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance.  *Brown,* 845 F.2d at 1213.  In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 620 (1966).  Substantial evidence exists only "in relationship to all the other evidence in the record," *Cotter,* 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 488 (1971).  A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence.  *Mason,* 994 F.2d at 1064.  The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Johnson,* 529 F.3d at 203; *Cotter,* 642 F.2d at 706-707.  Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole.  *Smith v. Califano,* 637 F.2d 968, 970 (3d Cir. 1981); *Dobrowolsky v. Califano,* 606 F.2d 403, 407 (3d Cir. 1979).

## II. DISCUSSION

### A. Sequential Evaluation Process Used by the Commissioner

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating supplemental security income claims. *See* 20 C.F.R. § 416.920; *Poulos,* 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant

(1) is engaging in substantial gainful activity,[1] (2) has an impairment that is severe or a combination of impairments that is severe,[2] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[3] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. *Id.* As part of step four the administrative law judge must determine the claimant's residual functional capacity. *Id.*[4]

---

[1] If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. § 416.910.

[2] The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. *Id.* If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 416.923 and 416.945(a)(2). An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl, and handle. 20 C.F.R. § 416.945(b). An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 416.945(c).

[3] If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step.

[4] If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. *See* Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. *Id*; 20 C.F.R. § 416.945; *Hartranft,* 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

### B. Plaintiff's Background and the ALJ's Decision

Plaintiff was born on June 9, 1963 and was 41 years old at the time of the alleged disability onset date. He has a limited education and has past relevant work as a textile worker, mail sorter, packer, dock worker, and sander. Plaintiff was involved in a motorcycle accident on May 21, 2005, during which he sustained a fracture to his right femur. Coleman underwent surgery and a rod and screw were utilized to fixate his fracture. Plaintiff also suffers from psychiatric impairments, which he alleges to stem from the motor vehicle accident.

Following a hearing, Administrative Law Judge ("ALJ") Timothy Wing determined that the Plaintiff was not disabled and therefore not entitled to

disability benefits, disability insurance benefits or for supplemental security income. We shall summarize the ALJ's decision herein.

At step one of the sequential evaluation process, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since March 1, 2008, the alleged onset date of the Plaintiff's disability. (ALJ Wing's Decision, dated June 7, 2010 (hereinafter "Wing Decision"), p. 4). At step two of the evaluation process, ALJ Wing concluded that Coleman has the following severe impairments: degenerative disc disease of the lumbar spine; arthritis; status-post fracture of the right lower extremity; chronic obstructive pulmonary disease ("COPD"); major depressive disorder; and alcohol dependence. The ALJ noted that these impairments are considered severe because they cause some limitation in Coleman's ability to perform some basic work activities. (Wing Decision, p. 4). Coleman does not dispute either of these findings by ALJ Wing.

At step three of the process, ALJ Wing found that the Plaintiff's impairments did not or in combination meet or equal a listed impairment. The ALJ noted that although Coleman is afflicted with severe impairments, the medical evidence and facts of the case in the case require a finding that none of Coleman's impairments alone or taken together are severe enough to meet the requirements of any of the listed impairments. The ALJ undertook a more detailed

an analysis of the Plaintiff's mental impairments, inasmuch as the Plaintiff's attorney conceded at the hearing that the Plaintiff's physical impairments did not meet any listings. Thus, the ALJ concluded that Coleman did not demonstrate marked restriction in the activities of daily living or in maintaining social functioning. The ALJ also noted that Plaintiff had not reported any repeated episodes of decompensation. (Wing Decision, pp. 4-7). Plaintiff disputes ALJ Wing's determination at this step, arguing that the ALJ did not give adequate weight to his treating psychiatrist's (Dr. Pope) reports, which show that Coleman meets Listings 12.0 (affective disorders), 12.05 (mental retardation) and 12.08 (personality disorders).

At step four of the sequential process, ALJ Wing determined that Coleman could not perform his past relevant work as a cutter in the textile industry (Wing Decision, p. 17), but that has the residual functional capacity ("RFC") to perform sedentary work so long as such work does not involve lifting more than 10 pounds at a time, and requires no more than occasional postural maneuvers such as balancing, stooping, kneeling, crouching, crawling and climbing on ramps and stairs. The work must not require climbing on ladders and must afford him the option to sit and stand during the work day, and he must avoid pushing or pulling with his lower right extremity. Further, the job must not involved prolonged

exposure to fumes, odors, dusts, gasses or extreme temperature due to Coleman's COPD. Finally, the ALJ determined that the Plaintiff can perform jobs that require no more than simple, routine, repetitive tasks that are not performed in a fast-paced production environment, and which involve only simple, work-related decisions, and in general, relatively few work-place changes. In setting Coleman's RFC, the ALJ reviewed the medical records and considered several other items including the opinions of the state agency psychological consultants. Also, in arriving at this RFC, the ALJ found that Coleman's statements about his functional limitations were not credible to the extent they were inconsistent with the medical records.

At step five, the ALJ found that, based on Coleman's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. The ALJ also based this determination on the testimony of the vocational expert at the hearing. Coleman argues that the ALJ did not give appropriate weight to the opinion of Dr. Gerstman, Coleman's most recent treating psychiatrist, who opined that Coleman is unable to work.

We shall now turn to a review of the ALJ's findings pursuant to the "substantial evidence" standard of review as set forth hereinabove.

## C. Analysis

As noted above, Coleman asserts that the ALJ failed to give appropriate weight to the opinions of his treating psychiatrists, Drs. Pope and Gerstman, when arriving at his determination that Plaintiff was not disabled. The Court of Appeals for this circuit has set forth the standard for evaluating the opinion of a treating physician in *Morales v. Apfel*, 225 F. 3d 310 (3d Cir. 2000). The Court of Appeals stated in relevant part as follows:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." . . . The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion.

*Id.* At 317-318 (internal citations omitted). The administrative law judge is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(d). In the present case, ALJ Wing specifically addressed the opinions of Drs. Pope and Gerstman, as well as the credibility of Coleman.

The social security regulations specify that the opinion of a treating physician may be accorded controlling weight only when it is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case. 20 C.F.R. § 404.1527(d)(2). Likewise, an ALJ is not obliged to accept the testimony of a claimant if it is not supported by the medical evidence. An impairment, whether physical or mental, must be established by "medical evidence consisting of signs, symptoms, and laboratory findings," and not just by the claimant's subjective statements. 20 C.F.R. § 404.1508 (2007).

In the matter *sub judice,* the ALJ appropriately considered the contrary medical opinions of the state agency physicians and psychologists and the objective medical evidence and concluded that the disability opinions of Drs. Pope and Gerstman were not adequately supported by the objective medical evidence. Specifically, ALJ Wing gave limited weight to Dr. Pope's assessments noting that "they are not consistent with the medical evidence and in fact, the assessments are difficult to follow and the various PRT forms competed by Dr. Pope are not consistent. Dr. Pope's assessment is an overstatement of the severity of the claimant's limitations." (Wing Decision, p. 16). ALJ Wing also gave limited weight to Dr. Gerstman's assessment that Coleman is unable to work because Dr. Gerstman "does not address any specific limitations and his opinion is quite conclusory and is not consistent with his rather benign mental status

11

examinations." (Wing Decision, p. 16). Our review of the record supports the ALJ's determination to give limited weight to these opinions, inasmuch as they were contrary to other objective medical evidence in the record. Moreover, the substantial evidence in the record supports the ALJ's finding that Plaintiff's subjective complaints were not totally credible, thus the opinions of disability offered by Drs. Pope and Gerstman based on those subjective complaints are not entitled to controlling weight. We see no error in the ALJ's methodology, and as noted he was fully free to reject the ultimate conclusions of Plaintiff's treating physicians based on the empirical evidence presented to him.

### III. CONCLUSION

Our review of the administrative record reveals that the decision of the commissioner is supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the decision of the Commissioner.

An appropriate Order will be entered.